**E-FILED**
Friday, 02 December, 2005 09:45:50 AM
Clerk, U.S. District Court, ILCD

101 292 005

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| LYNN T. GUEVREKIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| BLOOMINGTON POLICE DEPARTMENT, | ) | |
| CITY OF BLOOMINGTON, MCLEAN | ) | |
| COUNTY CENTER FOR HUMAN | ) | |
| SERVICES, HEARTLAND APARTMENT | ) | |
| MANAGEMENT, and WAYNE PELHANK, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION FOR REMOVAL

Petitioner/Defendant, CITY OF BLOOMINGTON, pursuant to 28 USC §1441. et seq.,

hereby Petitions to remove this action from the Circuit Court of the Eleventh Judicial Circuit,

McLean County, Illinois, to the United States District Court for the Central District of Illinois, Peoria

Division. In support of its Petition, Petitioner states:

1.      On September 27, 2005, Plaintiff, LYNN T. GUEVREKIAN, filed a Complaint

against Defendant, CITY OF BLOOMINGTON (which encompasses the incorrectly named

Bloomington Police Department) in the Circuit Court of the Eleventh Judicial Circuit, McLean

County, Illinois, Case No. 05-AR-264.

2.      Plaintiff effectuated service of the Amended Complaint on November 21, 2005 by

mail. Defendant did not receive the Amended Complaint until November 23, 2005. Copies of the

Amended Complaint and Proof of Service served upon Defendant are attached as Exhibit 1.

3.      Plaintiff's claim against the CITY OF BLOOMINGTON is a Federal Civil Rights

claim brought pursuant to 42 USC §1983.

4.     This Court has original jurisdiction of the matters alleged in Plaintiff's Complaint pursuant to 28 USC §1331 (Federal question). The matter is removable by Defendant pursuant to 28 USC § 1441.

5.     Defendant's Petition for Removal is timely pursuant to 28 USC § 1446(b) in that it is filed within 30 days of service of summons.

6.     Pursuant to 28 USC § 1446(d), Defendant is giving written notice of the filing of this Petition for Removal to all other parties and will file a copy of this Petition for Removal with the Clerk of the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, thereby affecting removal to this Court.

WHEREFORE, Petitioner/Defendant, CITY OF BLOOMINGTON, prays that the above action now pending against it in the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, be removed therefrom to this Court.

CITY OF BLOOMINGTON, Defendant

By: _____
Amanda J. Watson
QUINN, JOHNSTON, HENDERSON & PRETORIUS

Peter R. Jennetten (Illinois Bar No. 6237377)
Amanda J. Watson
QUINN, JOHNSTON, HENDERSON & PRETORIUS
227 N.E. Jefferson Street
Peoria, IL 61602-1211
Telephone: (309) 674-1133
Facsimile: (309) 674-6503
E-mail: pjennetten@qjhp.com
I:\1\Civil\Guevrekian v. Bloomington 101 292 005\guevrekian pet for removal.wpd

2

## PROOF OF SERVICE

The undersigned certifies that on _December 1_, 2005, all counsel of record were served with a copy of the foregoing document at their respective addresses by the method indicated below:

[ ✓ ]        U.S. Mail

[ ___ ]      Personal Delivery

[ ___ ]      Facsimile

[ ___ ]      Overnight Courier

Lynn T. Guevrekian
P.O. Box 1114
Bloomington, IL  61702-1114

J. Casey Costigan
Costigan & Wollrab, P.C.
P.O. Box 3127
Bloomington, IL  61702-3127

Eitan Weltman
Attorney at Law
802 N. Clinton
Suite A
Bloomington, IL  61701

3

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
MCLEAN COUNTY

September 27, 2005

Number of total pages: <10>

Case No.  AR 05 264

Lynn T. Guevrekian

Plaintiff

vs.

Bloomington Police Department; City of Bloomington
Mclean County Center For Human Services
Heartland Apartment Management; Wayne Pelhank

Defendants



FILED
McLEAN    SEP 2 7 2005    COUNTY
CIRCUIT CLERK

## AMENDED COMPLAINT

Plaintiff, Lynn T. Guevrekian submits her Amended Complaint.

## Mclean County Center For Human Services

Causes of Action:
1) Trespass;illegal entry into residence without permission, the breaking of the 4th Amendment Rights and also The Illinois State Bill of Rights.

2) Malpractice; Fraud and False Accusation of Crime

3) Professional Incompetence; negligence and malice

**EXHIBIT**

**1**

4) Defamation as it pertains to the verbal utterance of false statements negative in nature, for which there was no verification of or truth in, also identifying statements of a defamatory nature as outlined in Slander.

1) Nicole Piggush, a.k.a. Nicole Wilder, a social worker who was licensed as a Social Worker in the State of Illinois for seven months at the time of the May 20th, 2004 incident entered my residence uninvited after someone violently battering rammed open my apartment door. Nicole Piggush, while clearly located in the interior of my residence as opposed to the hallway of the building,  spoke to me from the vicinity of my kitchen while I was behind the shower curtain in the bathroom.  I requested that everyone leave my apartment and main room located adjacent to the kitchen so that I could get to my laundry basket full of clean clothes that was located in a Rubbermaid container in the main room.  Nicole Piggush answered me affirmatively that she would be outside in the hallway.  I identified Nicole Piggush by her voice once I saw her in person.

2) Because of the necessity of the need to show Malpractice;fraud and false accusation which has caused  distress and which produces an adverse record in society the records will be entered into evidence.  These records are proof of the malpractice and will be shown to be false at arbitration.  The falseness of the statements made in the report will be shown with objective evidence;objective evidence shows the reports to be false but also shows that they were deliberately falsified with intention to mislead in order to justify the wrong-doing of the social worker's actions.  Please note that I obtained these reports by simply walking into the Human Services Center and asking for them.  I presented no identification and I signed no authorization or paper before I obtained the reports from Center.

3) Professional Incompetence;negligence and malice will be shown at discovery with a detailed deposition and sworn statement by Lynn Guevrekian in addition to objective documents of proof.

4) Defamation occurred at the moment verbal information was delivered unto the Bloomington Police Department who then acted without any clear or imminent sign of danger.  The over-zealous and negligent behavior of the police officer who violently broke open the apartment door and then entered my apartment called me by name.

In addition, the affidavit of Nicole Piggush created on July 19th, 2005 states that I was interviewed. This statement is false. I was never interviewed and declined an interview or services. I stated clearly that I did not require services. I literally held up my hand. Nicole Piggush acted inappropriately by trying to super impose services. Later, when I called the Human Services place requesting clarification of the incident from Nicole Piggush she refused clarification adversely. In addition, the attorney, Dominic Salvati makes a false statement at the September 1, 2005 hearing in which he portrays an interview that took place whereby Nicole Piggush "sat down." Nicole Piggush never sat down anywhere in my presence at my residence and I was only in the actual presence of Nicole Piggush for about 12 minutes. Again, and repeatedly we have an instance where Nicole Piggush makes false statements with the intention to deceive as distinguished from a false statement that is merely mistaken. Her incompetence begins with the way that she handles the initial call and beginning of incident, it is then followed by a breach of duty or standard of practice and followed by malice and malpractice for Nicole Piggush chose to create false reports rather than correct her error. There are Mental Health Acts, one of them is called the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, which cannot be cited or used by the Defense or the Plantiff simply because there must be a "Recipient" of Mental Health Care and a "Therapist" and "Patient" relationship in order for this type of Act to be valid or used. Since there was no therapist/patient relationship this reference to the confidentiality act regarding disclosure of patients records made by the defendant does not apply because at no time was I a patient of Nicole Piggush and at no time was Nicole Piggush my therapist. Nicole Piggush superimposed her services on an individual who was objecting to her services. I have never been a patient of nor wish to be a patient of The Mclean County Center for Human Services. I will present proof that I had no verbal contract or any contract whatsoever with anyone at the Center. Though I did make a trip in person to the Center, it was only to request in writing verification of the May 20th, 2004 incident after reading the adverse record of Nicole Piggush. It will be declared now as fact that I, Lynn T. Guevrekian being of sound mind am not and have never been mentally ill, I do not have any clinical disorder, I have never been in a mental hospital. I have never had a therapist/patient relationship with the Mclean County Center for Human Services. I did willingly request from Mr. Hays, an employee of the Center that he give me verification of the falseness of May 20th incident involving the prank phone call and in lieu of a written statement Mr. Hays prepared a document. It

appears that in conversing with Mr. Hays that I answered a
question that appeared to demonstrate some type of verbal contract
with Mr. Hays but I made sure to cancel and void any possibility
of contract via certified mail.  I am not currently and have never
in the past taken a psychotropic drug or any drug or medication
for a mental condition or illness.  I am not nor have I ever been
violent.  I am not, nor have I ever been a homicidal perpetrator.
I have never threatened physical harm of any kind to my family.  I
have never threatened to kill my family.  I have never threatened
to kill my family even in an expression or figure of speech.  I
did, however state to my family via a voice mail message that I
would file for my father's inheritance if they did not give me my
share.  More statements of facts will follow in more depositions
if needed.  Objective evidence will be submitted as is needed.


Bloomington Police Department

Causes of Action

1) Trespass; illegal entry into residence violating my 4th
amendment rights and also the Illinois Bill of Rights.

2) Excessive Force

3) Breach of Duty

4) Libel

5) Obstruction of Justice

1) Trespass occurred when the police entered my residence,
uninvited and came into the bathroom where I was taking a shower.
The police officer called to me by name, so obviously he knew my
name was Lynn and was looking for me.  I looked around the
bathroom shower curtain keeping my naked body covered and I
immediately asked the officer, "What is this about?"  The officer
did not answer my question, he ordered me to get dressed and come
out.  After I asked everyone politely to allow me to get into the
other room and they responded by going out into the hallway I then
dressed and asked the social workers to come in, please note that
I only spent about 12 minutes with the social workers while the
police waited in the hallway.  I speculate that it took me about 5
minutes to finish rinsing the shampoo out of my hair and then get
dressed. After spending approximately 12 minutes in the company of
the social workers while standing dressed but with my shoes untied

and my hair wet from the shower. I told the social workers that it was a prank and a stunt and I made mention of my fathers inheritance. I never spoke to any family member on the phone and there was no conversation to any family member on the phone. I never had an argument with anyone on the phone. I never made a disturbing remark to anyone on the phone. I exclaimed in a normal volume of voice though exasperated "What did you do to my door?" as I looked at the door. A dark haired police officer who I believed at the time was named Officer Melton who was out in the hallway then crossed the threshold of my door- way into my apartment uninvited and stood in front of me about six inches from my face and asked me if I had a fire arms card. I replied that I did and that it was in a locked box inside of the kitchen cabinet and then the officer asked if he could see it. I then gave full cooperation to the officer as another officer with blond hair entered my residence uninvited and the two officers stood over me while I kneeled and opened a kitchen cabinet where a locked household safety box was screwed into the floor of the cabinet. The box itself had a combination lock on it and I opened the box and produced the valid fire arms card, which I had had for about 10 years. I noticed the dark haired officer had sweat dripping down the side of his brow as he wrote down information from the fire arms card.

2) The sweat that was dripping down the side of the officer's brow is significant as it shows the amount of exertion that was used to break open the door. The door was violently battering rammed open with repeated loud banging sounds. This is excessive force and violence which was unnecessary since there was no objective evidence of anything actually being wrong, there was no clear or imminent danger. There were no exigent circumstances. Had the social worker not been incompetent and had asked questions or verified her information and given the police some type of valid information the officer would have used other protocol since there was no impending threat to the safety of anyone. The origin of the prank phone call was being made from 1100 miles away and the apartment was located on the third floor with no other exit other than what was right outside the door where the police already were.

3) The Breach of Duty was that valid information was not acquired to substantiate any need to break open a door or to even make me a valid suspect of anything at all. There were no exigent circumstances involved. There are many statements on the officers report narrative which I may prove false with objective evidence.

In the proving false of many statements made on the Public Document which I obtained using the FOIA, the False statements will be the sound basis in which I use to show that not only is the document itself Libel, but it is also deliberately composed to mislead. By the way, this report also contradicts the social workers report.

4) Libel is the written defamation of a person and the report is Libel since it defames the plaintiff.

5) Obstruction of justice took place when I went to the police department and filed a harassment report about my sister who made the prank phone call. Someone changed my words on the report and left it "administratively closed." I signed nothing and I never said the things that were written on the harassment report that I attempted to file against my sister in order to protect myself. According to a notation on the harassment report, the reports were referred to Todd Greenburg at City Hall.

Heartland Apartment Management; Wayne Pelhank
Causes of Action

1) Violation of Illinois Rental Law for Entrance into residence

2) Libel

3) Fraud/Forgery

1 Except in an emergency, Renters must be given a reasonable notice before the owner or an agent of an apartment may key in. As far as any rule about putting a chain lock on the door, the chain lock that was on the door was there when I moved into the apartment and was also there in 1995;I had lived in the apartment in 1995.

2 The minute an employee of Heartland Apartment Management became a "witness" to the officers false report, that witness is also part of the Libel. If taken to trial he will commit Perjury. The Witness is identifiable because on the police report although the witness information is blacked out, the magic marker used to black out the information was low on ink and when the document is held

up to a light it reveals the identifying information of the witness.


3  I never, at any time signed a lease with Heartland Apartment Management.  Heartland Apartment Management was the buyer of the building I lived in and became the new owner of the building.  I was currently a month to month renter.  I had no intention of signing a lease and purposely did not seek a lease to sign so that exit from the building could be made easily.  Because of the incident on May 20th, 2004 whereby someone keys into my apartment opening the deadbolt lock for the police to then break open, Wayne Pelhank forges my signature on a false lease; the false lease grants permission for entry at anytime by the landlord.  Please note that I have a stack of signatures from the bank, a copy of my rental receipts and utility bills that will prove the lease to be a fraud/forgery.


Date/Time Record
Correspondence with Police and Social Workers
2004

May 20  Around 5:00 p.m. Incident Approximate time: 4:35 p.m. to 5:00 p.m.

May 21  2:18 p.m. Made call to Human Services and talked to Jennifer on telephone.  I called
to clarify the falseness of the incident at which time Jennifer told me that the police were there to protect the crisis people and not there for me.  I requested that Jennifer make a note that I was calling just in case my sister were to call again.

May 21  3:30 p.m. received telephone call from Mark Benson from Human Services and he called because my sister had called once again, a second time on this date.  We talked for no more than 15 minutes although his report appears to time a one hour correspondence.  I did not talk to Benson for one hour.

May 21  3:45 p.m.  Called Bloomington Police Station and talked to Officer Melton so that I could inform him that my sister called the Human Services again, for the second time and that I had just spoken to Mark Benson.  I told Officer Melton that I had never spoken to my sister on the phone and that it had been about four years since I talked to her.  Officer Melton said that Officer

Wamsley would be over to my apartment to talk to me in a few minutes.

May 22  4:00 p.m. Officer Wamsley came to my apartment in person. Officer Wamsley informed me that no report was made and that only a one line description of the incident was made because a property damage report needed to be filled out.  Officer Wamsley informed me that he did not come into my apartment on May 20th but that he stood out in the hallway.

May 24  I made an in person trip to Human Services to obtain reports.  Two separate reports were handed to me over the counter without me presenting identification or signing any release form.

May 26  I called Human services in a.m. but was unable to reach anyone and left a message.

May 26  11:30 a.m. I received a Return call from Nicole Piggush who was adverse and did not want me to come to the Human Services place in person to clarify anything.  She said that it would be bad to do that.  I insisted and she again did not want me to go there and said it would be bad if I went there.  Nicole Piggush asked me:  "How are you today, Lynn?"  as if she was talking to a child or perhaps someone with very limited mental skills.  I replied matter-of-factly that I felt as if someone had kicked me hard in the stomach and that my chest was tight and I had to sit down.

May 26  12:00 p.m. I called again and talked to Nicole Piggush who was again adverse, I addressed the issue of her recording falsely that I had depression and she stated that she wrote that because she figured that I would be depressed because my sister had made the prank phone call.  When I asked her why she said I was depressed for months, she said that she would change it on her report but that I could not have a copy of the report because it would take a long time to process.  She said that she did not understand why I needed to have a copy of the report anyway.  She scolded as she said that this wouldn't have happened if I answered my phone and to answer my phone!

May 26  Made in person trip to Bloomington Police station and filed a disorderly conduct report about my sister.

May 27  Called Human Services in a.m. and asked to talk to the supervisor.

May 27  3:30 p.m. Officer Wamsley called and asked how things
were.  I told Officer Wamsley that I had filed a disorderly
conduct report.  Officer Wamsley asked me if I was contacting an
attorney over the inheritance.

May 27  4:30 p.m.  Return call from Kim who said Mark Benson will
call me back.  Received no return call from Mark Benson.

May 28  12:00 p.m. Made an in person trip to Human Services and
asked for something in writing that clarified the false situation
and adverse report that had been made.  I asked to talk to the
supervisor who was not available.  Talked to Jennifer requesting
this written clarification.  Jennifer told me to come back and
talk to Chris Hays.

May 28  2:00 p.m.  Returned in person to Human Services and talked
to Chris Hays, requesting to talk to the supervisor who was not
available.  I then requested clarification from Chris Hays who
said that he could not give me what I requested because he was not
authorized to do so but that he could fill out a paper right then
and there evaluating me and I agreed in order to obtain
clarification of the falseness of the adverse report made by
Piggush.


June 21  Made in person trip to Bloomington Police station to add
to the disorderly conduct report I had filed on May 26th, not yet
realizing that there was no error made on the first report but
that someone was changing my words.  I signed no document and did
not make the statements on the disorderly conduct report on May 26
or June 21, the report statements are the words of someone else
who intervened and recorded those statements.  The report
continued to remain administratively closed and upon obtaining a
copy of the report, it was notated on the report that it had been
referred to Todd Greenburg.

June 21  I Sent individual notes to Nicole Piggush, Mark Benson
and Chris Hays via USPS registered mail which stated clearly that
I had no verbal contract with them nor any contract at all.  This
correspondence was made because I did not realize I had any kind
of contract with them at all until I read the reports.

June 21  I Sent a letter via registered mail to Robert Keller
Director of Health Services who was mistakenly taken for Director
of Human Services.  Keller returned a correspondence directing me
to Tom Barr, the correct director of Human Services.

July 2  I then Sent a letter via registered mail to Tom Barr,
Director of Human services requesting written clarification that
the incident was false and that the false reports be expunged.
Tom Barr responded in a timely fashion stating in so many words
that he could not give me what I asked for but that he would put
my letter in my file.


Plaintiff has enclosed in her amended complaint a date/time record
of correspondences with both the police department and Center For
Human Services which shows the great effort taken to correct the
corrupt behavior of the establishments in her community.  Many
documents were generated during the correspondences and will be
shown as needed.  In belief that this Court is in the proper
jurisdiction to correct the wrong doing by the defendants,
plaintiff continues with her demand for Justice the entitled
monetary amount which is designed to offer relief to the
plaintiff, who was wronged repeatedly and to such an extent as to
feel anguished and unwelcome in Bloomington, Illinois.   The
monetary amounts are also designed to show value and importance to
the laws that exist and penalization for the breaking of laws, to
discourage this type of behavior in the future.  Plaintiff also
requests review of the "Motion to Default" filed originally on
August 22, 2005, reviewing the procedures and events that lead up
to the filing of the Motion to Default and the validity of such a
motion being filed.


Lynn T. Guevrekian
1213 Royal Pointe Drive
Bloomington, Illinois
61704

<u>PROOF OF SERVICE</u>                              *"Amended Complaint"*

The undersigned certifies that a copy of the attached document dated  9/27/05
was served upon the attorneys of record by enclosing the document in an envelope
plainly addressed to the attorney's business address with postage fully prepaid and
by depositing the envelope into a U.S. Post Office Box in Bloomington, Illinois on
_____11/21/05_____    (Amended Complaint is 10 pages)


*Lynn T. Guevrekian (signature)*

Lynn T. Guevrekian
P.O. Box 1114
Bloomington, Illinois
61702-1114



<u>Attorneys of Record</u>

Casey Costigan    D. Salvati  et al
308 East Washington Street
P.O. Box 3127
Bloomington, Illinois   61701

Eitan Weltman
802 N. Clinton Street Suite A
Bloomington, Illinois   61701

Peter Jenneten   A. Watson  et al
227 N.E. Jefferson Street
Peoria, Illinois   61602

101 292 005

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| LYNN T. GUEVREKIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| BLOOMINGTON POLICE DEPARTMENT, | ) | |
| CITY OF BLOOMINGTON, MCLEAN | ) | |
| COUNTY CENTER FOR HUMAN | ) | |
| SERVICES, HEARTLAND APARTMENT | ) | |
| MANAGEMENT, and WAYNE PELHANK, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION FOR REMOVAL

Petitioner/Defendant, CITY OF BLOOMINGTON, pursuant to 28 USC §1441. et seq.,

hereby Petitions to remove this action from the Circuit Court of the Eleventh Judicial Circuit,

McLean County, Illinois, to the United States District Court for the Central District of Illinois, Peoria

Division. In support of its Petition, Petitioner states:

1.     On September 27, 2005, Plaintiff, LYNN T. GUEVREKIAN, filed a Complaint

against Defendant, CITY OF BLOOMINGTON (which encompasses the incorrectly named

Bloomington Police Department) in the Circuit Court of the Eleventh Judicial Circuit, McLean

County, Illinois, Case No. 05-AR-264.

2.     Plaintiff effectuated service of the Amended Complaint on November 21, 2005 by

mail. Defendant did not receive the Amended Complaint until November 23, 2005. Copies of the

Amended Complaint and Proof of Service served upon Defendant are attached as Exhibit 1.

3.     Plaintiff's claim against the CITY OF BLOOMINGTON is a Federal Civil Rights

claim brought pursuant to 42 USC §1983.

4.      This Court has original jurisdiction of the matters alleged in Plaintiff's Complaint pursuant to 28 USC §1331 (Federal question). The matter is removable by Defendant pursuant to 28 USC § 1441.

5.      Defendant's Petition for Removal is timely pursuant to 28 USC § 1446(b) in that it is filed within 30 days of service of summons.

6.      Pursuant to 28 USC § 1446(d), Defendant is giving written notice of the filing of this Petition for Removal to all other parties and will file a copy of this Petition for Removal with the Clerk of the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, thereby affecting removal to this Court.

WHEREFORE, Petitioner/Defendant, CITY OF BLOOMINGTON, prays that the above action now pending against it in the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, be removed therefrom to this Court.

CITY OF BLOOMINGTON, Defendant

By: _____
Amanda J. Watson
QUINN, JOHNSTON, HENDERSON & PRETORIUS

Peter R. Jennetten (Illinois Bar No. 6237377)
Amanda J. Watson
QUINN, JOHNSTON, HENDERSON & PRETORIUS
227 N.E. Jefferson Street
Peoria, IL 61602-1211
Telephone: (309) 674-1133
Facsimile: (309) 674-6503
E-mail: pjennetten@qjhp.com
I:\1\Civil\Guevrekian v. Bloomington 101 292 005\guevrekian pet for removal.wpd

2

## **PROOF OF SERVICE**

The undersigned certifies that on ___Ｄｅｃｅｍｂｅｒ 1___, 2005, all counsel of record were served with a copy of the foregoing document at their respective addresses by the method indicated below:

[ ✓ ]     U.S. Mail

[_____]     Personal Delivery

[_____]     Facsimile

[_____]     Overnight Courier

Lynn T. Guevrekian
P.O. Box 1114
Bloomington, IL  61702-1114

J. Casey Costigan
Costigan & Wollrab, P.C.
P.O. Box 3127
Bloomington, IL  61702-3127

Eitan Weltman
Attorney at Law
802 N. Clinton
Suite A
Bloomington, IL  61701

3

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
MCLEAN COUNTY

September 27, 2005

Number of total pages: <10>

Case No. AR 05 264

Lynn T. Guevrekian

Plaintiff

vs.

Bloomington Police Department; City of Bloomington
Mclean County Center For Human Services
Heartland Apartment Management; Wayne Pelhank

Defendants

FILED

McLEAN    SEP 27 2005    COUNTY

CIRCUIT CLERK

## AMENDED COMPLAINT

Plaintiff, Lynn T. Guevrekian submits her Amended Complaint.

## Mclean County Center For Human Services

Causes of Action:
1) Trespass;illegal entry into residence without permission, the breaking of the 4th Amendment Rights and also The Illinois State Bill of Rights.

2) Malpractice; Fraud and False Accusation of Crime

3) Professional Incompetence; negligence and malice



EXHIBIT
1

4) Defamation as it pertains to the verbal utterance of false statements negative in nature, for which there was no verification of or truth in, also identifying statements of a defamatory nature as outlined in Slander.

1) Nicole Piggush, a.k.a. Nicole Wilder, a social worker who was licensed as a Social Worker in the State of Illinois for seven months at the time of the May 20th, 2004 incident entered my residence uninvited after someone violently battering rammed open my apartment door. Nicole Piggush, while clearly located in the interior of my residence as opposed to the hallway of the building,  spoke to me from the vicinity of my kitchen while I was behind the shower curtain in the bathroom.  I requested that everyone leave my apartment and main room located adjacent to the kitchen so that I could get to my laundry basket full of clean clothes that was located in a Rubbermaid container in the main room.  Nicole Piggush answered me affirmatively that she would be outside in the hallway.  I identified Nicole Piggush by her voice once I saw her in person.

2) Because of the necessity of the need to show Malpractice;fraud and false accusation which has caused  distress and which produces an adverse record in society the records will be entered into evidence.  These records are proof of the malpractice and will be shown to be false at arbitration.  The falseness of the statements made in the report will be shown with objective evidence;objective evidence shows the reports to be false but also shows that they were deliberately falsified with intention to mislead in order to justify the wrong-doing of the social worker's actions.  Please note that I obtained these reports by simply walking into the Human Services Center and asking for them.  I presented no identification and I signed no authorization or paper before I obtained the reports from Center.

3) Professional Incompetence;negligence and malice will be shown at discovery with a detailed deposition and sworn statement by Lynn Guevrekian in addition to objective documents of proof.

4) Defamation occurred at the moment verbal information was delivered unto the Bloomington Police Department who then acted without any clear or imminent sign of danger.  The over-zealous and negligent behavior of the police officer who violently broke open the apartment door and then entered my apartment called me by name.

3

In addition, the affidavit of Nicole Piggush created on July 19th, 2005 states that I was interviewed. This statement is false. I was never interviewed and declined an interview or services. I stated clearly that I did not require services. I literally held up my hand. Nicole Piggush acted inappropriately by trying to super impose services. Later, when I called the Human Services place requesting clarification of the incident from Nicole Piggush she refused clarification adversely. In addition, the attorney, Dominic Salvati makes a false statement at the September 1, 2005 hearing in which he portrays an interview that took place whereby Nicole Piggush "sat down." Nicole Piggush never sat down anywhere in my presence at my residence and I was only in the actual presence of Nicole Piggush for about 12 minutes. Again, and repeatedly we have an instance where Nicole Piggush makes false statements with the intention to deceive as distinguished from a false statement that is merely mistaken. Her incompetence begins with the way that she handles the initial call and beginning of incident, it is then followed by a breach of duty or standard of practice and followed by malice and malpractice for Nicole Piggush chose to create false reports rather than correct her error. There are Mental Health Acts, one of them is called the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, which cannot be cited or used by the Defense or the Plantiff simply because there must be a "Recipient" of Mental Health Care and a "Therapist" and "Patient" relationship in order for this type of Act to be valid or used. Since there was no therapist/patient relationship this reference to the confidentiality act regarding disclosure of patients records made by the defendant does not apply because at no time was I a patient of Nicole Piggush and at no time was Nicole Piggush my therapist. Nicole Piggush superimposed her services on an individual who was objecting to her services. I have never been a patient of nor wish to be a patient of The Mclean County Center for Human Services. I will present proof that I had no verbal contract or any contract whatsoever with anyone at the Center. Though I did make a trip in person to the Center, it was only to request in writing verification of the May 20th, 2004 incident after reading the adverse record of Nicole Piggush. It will be declared now as fact that I, Lynn T. Guevrekian being of sound mind am not and have never been mentally ill, I do not have any clinical disorder, I have never been in a mental hospital. I have never had a therapist/patient relationship with the Mclean County Center for Human Services. I did willingly request from Mr. Hays, an employee of the Center that he give me verification of the falseness of May 20th incident involving the prank phone call and in lieu of a written statement Mr. Hays prepared a document. It

appears that in conversing with Mr. Hays that I answered a
question that appeared to demonstrate some type of verbal contract
with Mr. Hays but I made sure to cancel and void any possibility
of contract via certified mail. I am not currently and have never
in the past taken a psychotropic drug or any drug or medication
for a mental condition or illness. I am not nor have I ever been
violent. I am not, nor have I ever been a homicidal perpetrator.
I have never threatened physical harm of any kind to my family. I
have never threatened to kill my family. I have never threatened
to kill my family even in an expression or figure of speech. I
did, however state to my family via a voice mail message that I
would file for my father's inheritance if they did not give me my
share. More statements of facts will follow in more depositions
if needed. Objective evidence will be submitted as is needed.


Bloomington Police Department

Causes of Action

1) Trespass; illegal entry into residence violating my 4th
amendment rights and also the Illinois Bill of Rights.

2) Excessive Force

3) Breach of Duty

4) Libel

5) Obstruction of Justice

1) Trespass occurred when the police entered my residence,
uninvited and came into the bathroom where I was taking a shower.
The police officer called to me by name, so obviously he knew my
name was Lynn and was looking for me. I looked around the
bathroom shower curtain keeping my naked body covered and I
immediately asked the officer, "What is this about?" The officer
did not answer my question, he ordered me to get dressed and come
out. After I asked everyone politely to allow me to get into the
other room and they responded by going out into the hallway I then
dressed and asked the social workers to come in, please note that
I only spent about 12 minutes with the social workers while the
police waited in the hallway. I speculate that it took me about 5
minutes to finish rinsing the shampoo out of my hair and then get
dressed. After spending approximately 12 minutes in the company of
the social workers while standing dressed but with my shoes untied

and my hair wet from the shower.  I told the social workers that it was a prank and a stunt and I made mention of my fathers inheritance.  I never spoke to any family member on the phone and there was no conversation to any family member on the phone.  I never had an argument with anyone on the phone.  I never made a disturbing remark to anyone on the phone.  I exclaimed in a normal volume of voice though exasperated "What did you do to my door?" as I looked at the door.  A dark haired police officer who I believed at the time was named Officer Melton who was out in the hallway then crossed the threshold of my door- way into my apartment uninvited and stood in front of me about six inches from my face and asked me  if I had a fire arms card.  I replied that I did and that it was in a locked box inside of the kitchen cabinet and then the officer asked if he could see it.  I then gave full cooperation to the officer as another officer with blond hair entered my residence uninvited and the two officers stood over me while I kneeled and opened a kitchen cabinet where a locked household safety box was screwed into the floor of the cabinet. The box itself had a combination lock on it and I opened the box and produced the valid fire arms card, which I had had for about 10 years.  I noticed the dark haired officer had sweat dripping down the side of his brow as he wrote down information from the fire arms card.

2)  The sweat that was dripping down the side of the officer's brow is significant as it shows the amount of exertion that was used to break open the door.  The door was violently battering rammed open with repeated loud banging sounds.  This is excessive force and violence which was unnecessary since there was no objective evidence of anything actually being wrong, there was no clear or imminent danger.  There were no exigent circumstances. Had the social worker not been incompetent and had asked questions or verified her information and given the police some type of valid information the officer would have used other protocol since there was no impending threat to the safety of anyone.  The origin of the prank phone call was being made from 1100 miles away and the apartment was located on the third floor with no other exit other than what was right outside the door where the police already were.

3) The Breach of Duty was that valid information was not acquired to substantiate any need to break open a door or to even make me a valid suspect of anything at all.  There were no exigent circumstances involved.  There are many statements on the officers report narrative which I may prove false with objective evidence.

In the proving false of many statements made on the Public
Document which I obtained using the FOIA, the False statements
will be the sound basis in which I use to show that not only is
the document itself Libel, but it is also deliberately composed to
mislead.  By the way, this report also contradicts the social
workers report.


4) Libel is the written defamation of a person and the report is
Libel since it defames the plaintiff.


5)  Obstruction of justice took place when I went to the police
department and filed a harassment report about my sister who made
the prank phone call.  Someone changed my words on the report and
left it "administratively closed."  I signed nothing and I never
said the things that were written on the harassment report that I
attempted to file against my sister in order to protect myself.
According to a notation on the harassment report, the reports were
referred to Todd Greenburg at City Hall.


Heartland Apartment Management; Wayne Pelhank
Causes of Action

1) Violation of Illinois Rental Law for Entrance into residence

2) Libel

3) Fraud/Forgery

1  Except in an emergency, Renters must be given a reasonable
notice before the owner or an agent of an apartment may key in.
As far as any rule about putting a chain lock on the door, the
chain lock that was on the door was there when I moved into the
apartment and was also there in 1995;I had lived in the apartment
in 1995.


2  The minute an employee of Heartland Apartment Management became
a "witness" to the officers false report, that witness is also
part of the Libel.  If taken to trial he will commit Perjury.  The
Witness is identifiable because on the police report although the
witness information is blacked out, the magic marker used to black
out the information was low on ink and when the document is held

up to a light it reveals the identifying information of the
witness.

3   I never, at any time signed a lease with Heartland Apartment
Management.   Heartland Apartment Management was the buyer of the
building I lived in and became the new owner of the building.   I
was currently a month to month renter.   I had no intention of
signing a lease and purposely did not seek a lease to sign so that
exit from the building could be made easily.   Because of the
incident on May 20th, 2004 whereby someone keys into my apartment
opening the deadbolt lock for the police to then break open, Wayne
Pelhank forges my signature on a false lease; the false lease
grants permission for entry at anytime by the landlord.   Please
note that I have a stack of signatures from the bank, a copy of my
rental receipts and utility bills that will prove the lease to be
a fraud/forgery.

Date/Time Record
Correspondence with Police and Social Workers
2004

May 20  Around 5:00 p.m. Incident Approximate time: 4:35 p.m. to
5:00 p.m.

May 21  2:18 p.m. Made call to Human Services and talked to
Jennifer on telephone.   I called
to clarify the falseness of the incident at which time Jennifer
told me that the police were there to protect the crisis people
and not there for me.   I requested that Jennifer make a note that
I was calling just in case my sister were to call again.

May 21  3:30 p.m. received telephone call from Mark Benson from
Human Services and he called because my sister had called once
again, a second time on this date.   We talked for no more than 15
minutes although his report appears to time a one hour
correspondence.   I did not talk to Benson for one hour.

May 21  3:45 p.m.  Called Bloomington Police Station and talked to
Officer Melton so that I could inform him that my sister called
the Human Services again, for the second time and that I had just
spoken to Mark Benson.   I told Officer Melton that I had never
spoken to my sister on the phone and that it had been about four
years since I talked to her.   Officer Melton said that Officer

Wamsley would be over to my apartment to talk to me in a few minutes.

May 22  4:00 p.m. Officer Wamsley came to my apartment in person. Officer Wamsley informed me that no report was made and that only a one line description of the incident was made because a property damage report needed to be filled out.  Officer Wamsley informed me that he did not come into my apartment on May 20th but that he stood out in the hallway.

May 24  I made an in person trip to Human Services to obtain reports.  Two separate reports were handed to me over the counter without me presenting identification or signing any release form.

May 26  I called Human services in a.m. but was unable to reach anyone and left a message.

May 26  11:30 a.m. I received a Return call from Nicole Piggush who was adverse and did not want me to come to the Human Services place in person to clarify anything.  She said that it would be bad to do that.  I insisted and she again did not want me to go there and said it would be bad if I went there.  Nicole Piggush asked me:  "How are you today, Lynn?"  as if she was talking to a child or perhaps someone with very limited mental skills.  I replied matter-of-factly that I felt as if someone had kicked me hard in the stomach and that my chest was tight and I had to sit down.

May 26  12:00 p.m. I called again and talked to Nicole Piggush who was again adverse, I addressed the issue of her recording falsely that I had depression and she stated that she wrote that because she figured that I would be depressed because my sister had made the prank phone call.  When I asked her why she said I was depressed for months, she said that she would change it on her report but that I could not have a copy of the report because it would take a long time to process.  She said that she did not understand why I needed to have a copy of the report anyway.  She scolded as she said that this wouldn't have happened if I answered my phone and to answer my phone!

May 26  Made in person trip to Bloomington Police station and filed a disorderly conduct report about my sister.

May 27  Called Human Services in a.m. and asked to talk to the supervisor.

May 27  3:30 p.m. Officer Wamsley called and asked how things were.  I told Officer Wamsley that I had filed a disorderly conduct report.  Officer Wamsley asked me if I was contacting an attorney over the inheritance.

May 27  4:30 p.m.  Return call from Kim who said Mark Benson will call me back.  Received no return call from Mark Benson.

May 28  12:00 p.m. Made an in person trip to Human Services and asked for something in writing that clarified the false situation and adverse report that had been made.  I asked to talk to the supervisor who was not available.  Talked to Jennifer requesting this written clarification.  Jennifer told me to come back and talk to Chris Hays.

May 28  2:00 p.m.  Returned in person to Human Services and talked to Chris Hays, requesting to talk to the supervisor who was not available.  I then requested clarification from Chris Hays who said that he could not give me what I requested because he was not authorized to do so but that he could fill out a paper right then and there evaluating me and I agreed in order to obtain clarification of the falseness of the adverse report made by Piggush.

June 21  Made in person trip to Bloomington Police station to add to the disorderly conduct report I had filed on May 26th, not yet realizing that there was no error made on the first report but that someone was changing my words.  I signed no document and did not make the statements on the disorderly conduct report on May 26 or June 21, the report statements are the words of someone else who intervened and recorded those statements.  The report continued to remain administratively closed and upon obtaining a copy of the report, it was notated on the report that it had been referred to Todd Greenburg.

June 21  I Sent individual notes to Nicole Piggush, Mark Benson and Chris Hays via USPS registered mail which stated clearly that I had no verbal contract with them nor any contract at all.  This correspondence was made because I did not realize I had any kind of contract with them at all until I read the reports.

June 21  I Sent a letter via registered mail to Robert Keller Director of Health Services who was mistakenly taken for Director of Human Services.  Keller returned a correspondence directing me to Tom Barr, the correct director of Human Services.

July 2  I then Sent a letter via registered mail to Tom Barr,
Director of Human services requesting written clarification that
the incident was false and that the false reports be expunged.
Tom Barr responded in a timely fashion stating in so many words
that he could not give me what I asked for but that he would put
my letter in my file.


Plaintiff has enclosed in her amended complaint a date/time record
of correspondences with both the police department and Center For
Human Services which shows the great effort taken to correct the
corrupt behavior of the establishments in her community.  Many
documents were generated during the correspondences and will be
shown as needed.  In belief that this Court is in the proper
jurisdiction to correct the wrong doing by the defendants,
plaintiff continues with her demand for Justice the entitled
monetary amount which is designed to offer relief to the
plaintiff, who was wronged repeatedly and to such an extent as to
feel anguished and unwelcome in Bloomington, Illinois.   The
monetary amounts are also designed to show value and importance to
the laws that exist and penalization for the breaking of laws, to
discourage this type of behavior in the future.  Plaintiff also
requests review of the "Motion to Default" filed originally on
August 22, 2005, reviewing the procedures and events that lead up
to the filing of the Motion to Default and the validity of such a
motion being filed.


Lynn T. Guevrekian
1213 Royal Pointe Drive
Bloomington, Illinois
61704

PROOF OF SERVICE                              *"Amended Complaint"*

*9/27/05*

The undersigned certifies that a copy of the attached document dated _____
was served upon the attorneys of record by enclosing the document in an envelope
plainly addressed to the attorney's business address with postage fully prepaid and
by depositing the envelope into a U.S. Post Office Box in Bloomington, Illinois on
_____ 11/21/05 _____  (Amended Complaint is 10 pages)


*Lynn Guevrekian*

Lynn T. Guevrekian
P.O. Box 1114
Bloomington, Illinois
61702-1114



Attorneys of Record

Casey Costigan    D. Salvati et al
308 East Washington Street
P.O. Box 3127
Bloomington, Illinois   61701

Eitan Weltman
802 N. Clinton Street Suite A
Bloomington, Illinois   61701

Peter Jenneten   A. Watson et al
227 N.E. Jefferson Street
Peoria, Illinois   61602