E-FILED
Tuesday, 24 January, 2006  04:59:12 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
MCLEAN COUNTY

September 27, 2005

Number of total pages: <10>

Case No.  AR 05 264

Lynn T. Guevrekian

Plaintiff

vs.

Bloomington Police Department; City of Bloomington
Mclean County Center For Human Services
Heartland Apartment Management; Wayne Pelhank

Defendants



FILED
SEP 2 1 2005
McLEAN COUNTY
CIRCUIT CLERK

AMENDED COMPLAINT

Plaintiff, Lynn T. Guevrekian submits her Amended Complaint.

Mclean County Center For Human Services

Causes of Action:
1) Trespass; illegal entry into residence without permission, the breaking of the 4th Amendment Rights and also The Illinois State Bill of Rights.

2) Malpractice; Fraud and False Accusation of Crime

3) Professional Incompetence; negligence and malice

2

4) Defamation as it pertains to the verbal utterance of false statements negative in nature, for which there was no verification of or truth in, also identifying statements of a defamatory nature as outlined in Slander.

1) Nicole Piggush, a.k.a. Nicole Wilder, a social worker who was licensed as a Social Worker in the State of Illinois for seven months at the time of the May 20th, 2004 incident entered my residence uninvited after someone violently battering rammed open my apartment door. Nicole Piggush, while clearly located in the interior of my residence as opposed to the hallway of the building, spoke to me from the vicinity of my kitchen while I was behind the shower curtain in the bathroom. I requested that everyone leave my apartment and main room located adjacent to the kitchen so that I could get to my laundry basket full of clean clothes that was located in a Rubbermaid container in the main room. Nicole Piggush answered me affirmatively that she would be outside in the hallway. I identified Nicole Piggush by her voice once I saw her in person.

2) Because of the necessity of the need to show Malpractice;fraud and false accusation which has caused distress and which produces an adverse record in society the records will be entered into evidence. These records are proof of the malpractice and will be shown to be false at arbitration. The falseness of the statements made in the report will be shown with objective evidence;objective evidence shows the reports to be false but also shows that they were deliberately falsified with intention to mislead in order to justify the wrong-doing of the social worker's actions. Please note that I obtained these reports by simply walking into the Human Services Center and asking for them. I presented no identification and I signed no authorization or paper before I obtained the reports from Center.

3) Professional Incompetence;negligence and malice will be shown at discovery with a detailed deposition and sworn statement by Lynn Guevrekian in addition to objective documents of proof.

4) Defamation occurred at the moment verbal information was delivered unto the Bloomington Police Department who then acted without any clear or imminent sign of danger. The over-zealous and negligent behavior of the police officer who violently broke open the apartment door and then entered my apartment called me by name.

In addition, the affidavit of Nicole Piggush created on July 19th, 2005 states that I was interviewed. This statement is false. I was never interviewed and declined an interview or services. I stated clearly that I did not require services. I literally held up my hand. Nicole Piggush acted inappropriately by trying to super impose services. Later, when I called the Human Services place requesting clarification of the incident from Nicole Piggush she refused clarification adversely. In addition, the attorney, Dominic Salvati makes a false statement at the September 1, 2005 hearing in which he portrays an interview that took place whereby Nicole Piggush "sat down." Nicole Piggush never sat down anywhere in my presence at my residence and I was only in the actual presence of Nicole Piggush for about 12 minutes. Again, and repeatedly we have an instance where Nicole Piggush makes false statements with the intention to deceive as distinguished from a false statement that is merely mistaken. Her incompetence begins with the way that she handles the initial call and beginning of incident, it is then followed by a breach of duty or standard of practice and followed by malice and malpractice for Nicole Piggush chose to create false reports rather than correct her error. There are Mental Health Acts, one of them is called the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, which cannot be cited or used by the Defense or the Plantiff simply because there must be a "Recipient" of Mental Health Care and a "Therapist" and "Patient" relationship in order for this type of Act to be valid or used. Since there was no therapist/patient relationship this reference to the confidentiality act regarding disclosure of patients records made by the defendant does not apply because at no time was I a patient of Nicole Piggush and at no time was Nicole Piggush my therapist. Nicole Piggush superimposed her services on an individual who was objecting to her services. I have never been a patient of nor wish to be a patient of The Mclean County Center for Human Services. I will present proof that I had no verbal contract or any contract whatsoever with anyone at the Center. Though I did make a trip in person to the Center, it was only to request in writing verification of the May 20th, 2004 incident after reading the adverse record of Nicole Piggush. It will be declared now as fact that I, Lynn T. Guevrekian being of sound mind am not and have never been mentally ill, I do not have any clinical disorder, I have never been in a mental hospital. I have never had a therapist/patient relationship with the Mclean County Center for Human Services. I did willingly request from Mr. Hays, an employee of the Center that he give me verification of the falseness of May 20th incident involving the prank phone call and in lieu of a written statement Mr. Hays prepared a document. It

appears that in conversing with Mr. Hays that I answered a question that appeared to demonstrate some type of verbal contract with Mr. Hays but I made sure to cancel and void any possibility of contract via certified mail. I am not currently and have never in the past taken a psychotropic drug or any drug or medication for a mental condition or illness. I am not nor have I ever been violent. I am not, nor have I ever been a homicidal perpetrator. I have never threatened physical harm of any kind to my family. I have never threatened to kill my family. I have never threatened to kill my family even in an expression or figure of speech. I did, however state to my family via a voice mail message that I would file for my father's inheritance if they did not give me my share. More statements of facts will follow in more depositions if needed. Objective evidence will be submitted as is needed.

---

Bloomington Police Department

Causes of Action

1) Trespass; illegal entry into residence violating my 4th amendment rights and also the Illinois Bill of Rights.

2) Excessive Force

3) Breach of Duty

4) Libel

5) Obstruction of Justice

1) Trespass occurred when the police entered my residence, uninvited and came into the bathroom where I was taking a shower. The police officer called to me by name, so obviously he knew my name was Lynn and was looking for me. I looked around the bathroom shower curtain keeping my naked body covered and I immediately asked the officer, "What is this about?" The officer did not answer my question, he ordered me to get dressed and come out. After I asked everyone politely to allow me to get into the other room and they responded by going out into the hallway I then dressed and asked the social workers to come in, please note that I only spent about 12 minutes with the social workers while the police waited in the hallway. I speculate that it took me about 5 minutes to finish rinsing the shampoo out of my hair and then get dressed. After spending approximately 12 minutes in the company of the social workers while standing dressed but with my shoes untied

and my hair wet from the shower. I told the social workers that it was a prank and a stunt and I made mention of my fathers inheritance. I never spoke to any family member on the phone and there was no conversation to any family member on the phone. I never had an argument with anyone on the phone. I never made a disturbing remark to anyone on the phone. I exclaimed in a normal volume of voice though exasperated "What did you do to my door?" as I looked at the door. A dark haired police officer who I believed at the time was named Officer Melton who was out in the hallway then crossed the threshold of my door-way into my apartment uninvited and stood in front of me about six inches from my face and asked me if I had a fire arms card. I replied that I did and that it was in a locked box inside of the kitchen cabinet and then the officer asked if he could see it. I then gave full cooperation to the officer as another officer with blond hair entered my residence uninvited and the two officers stood over me while I kneeled and opened a kitchen cabinet where a locked household safety box was screwed into the floor of the cabinet. The box itself had a combination lock on it and I opened the box and produced the valid fire arms card, which I had had for about 10 years. I noticed the dark haired officer had sweat dripping down the side of his brow as he wrote down information from the fire arms card.

2) The sweat that was dripping down the side of the officer's brow is significant as it shows the amount of exertion that was used to break open the door. The door was violently battering rammed open with repeated loud banging sounds. This is excessive force and violence which was unnecessary since there was no objective evidence of anything actually being wrong, there was no clear or imminent danger. There were no exigent circumstances. Had the social worker not been incompetent and had asked questions or verified her information and given the police some type of valid information the officer would have used other protocol since there was no impending threat to the safety of anyone. The origin of the prank phone call was being made from 1100 miles away and the apartment was located on the third floor with no other exit other than what was right outside the door where the police already were.

3) The Breach of Duty was that valid information was not acquired to substantiate any need to break open a door or to even make me a valid suspect of anything at all. There were no exigent circumstances involved. There are many statements on the officers report narrative which I may prove false with objective evidence.

In the proving false of many statements made on the Public Document which I obtained using the FOIA, the False statements will be the sound basis in which I use to show that not only is the document itself Libel, but it is also deliberately composed to mislead. By the way, this report also contradicts the social workers report.

4) Libel is the written defamation of a person and the report is Libel since it defames the plaintiff.

5) Obstruction of justice took place when I went to the police department and filed a harassment report about my sister who made the prank phone call. Someone changed my words on the report and left it "administratively closed." I signed nothing and I never said the things that were written on the harassment report that I attempted to file against my sister in order to protect myself. According to a notation on the harassment report, the reports were referred to Todd Greenburg at City Hall.

Heartland Apartment Management; Wayne Pelhank
Causes of Action

1) Violation of Illinois Rental Law for Entrance into residence

2) Libel

3) Fraud/Forgery

1  Except in an emergency, Renters must be given a reasonable notice before the owner or an agent of an apartment may key in. As far as any rule about putting a chain lock on the door, the chain lock that was on the door was there when I moved into the apartment and was also there in 1995;I had lived in the apartment in 1995.

2  The minute an employee of Heartland Apartment Management became a "witness" to the officers false report, that witness is also part of the Libel. If taken to trial he will commit Perjury. The Witness is identifiable because on the police report although the witness information is blacked out, the magic marker used to black out the information was low on ink and when the document is held

up to a light it reveals the identifying information of the witness.


3  I never, at any time signed a lease with Heartland Apartment Management.  Heartland Apartment Management was the buyer of the building I lived in and became the new owner of the building.  I was currently a month to month renter.  I had no intention of signing a lease and purposely did not seek a lease to sign so that exit from the building could be made easily.  Because of the incident on May 20th, 2004 whereby someone keys into my apartment opening the deadbolt lock for the police to then break open, Wayne Pelhank forges my signature on a false lease; the false lease grants permission for entry at anytime by the landlord.  Please note that I have a stack of signatures from the bank, a copy of my rental receipts and utility bills that will prove the lease to be a fraud/forgery.


Date/Time Record
Correspondence with Police and Social Workers
2004

May 20  Around 5:00 p.m. Incident Approximate time: 4:35 p.m. to 5:00 p.m.

May 21  2:18 p.m. Made call to Human Services and talked to Jennifer on telephone.  I called
to clarify the falseness of the incident at which time Jennifer told me that the police were there to protect the crisis people and not there for me.  I requested that Jennifer make a note that I was calling just in case my sister were to call again.

May 21  3:30 p.m. received telephone call from Mark Benson from Human Services and he called because my sister had called once again, a second time on this date.  We talked for no more than 15 minutes although his report appears to time a one hour correspondence.  I did not talk to Benson for one hour.

May 21  3:45 p.m.  Called Bloomington Police Station and talked to Officer Melton so that I could inform him that my sister called the Human Services again, for the second time and that I had just spoken to Mark Benson.  I told Officer Melton that I had never spoken to my sister on the phone and that it had been about four years since I talked to her.  Officer Melton said that Officer

Wamsley would be over to my apartment to talk to me in a few minutes.

May 22  4:00 p.m. Officer Wamsley came to my apartment in person. Officer Wamsley informed me that no report was made and that only a one line description of the incident was made because a property damage report needed to be filled out.  Officer Wamsley informed me that he did not come into my apartment on May 20th but that he stood out in the hallway.

May 24  I made an in person trip to Human Services to obtain reports.  Two separate reports were handed to me over the counter without me presenting identification or signing any release form.

May 26  I called Human services in a.m. but was unable to reach anyone and left a message.

May 26  11:30 a.m. I received a Return call from Nicole Piggush who was adverse and did not want me to come to the Human Services place in person to clarify anything.  She said that it would be bad to do that.  I insisted and she again did not want me to go there and said it would be bad if I went there.  Nicole Piggush asked me:  "How are you today, Lynn?"  as if she was talking to a child or perhaps someone with very limited mental skills.  I replied matter-of-factly that I felt as if someone had kicked me hard in the stomach and that my chest was tight and I had to sit down.

May 26  12:00 p.m. I called again and talked to Nicole Piggush who was again adverse, I addressed the issue of her recording falsely that I had depression and she stated that she wrote that because she figured that I would be depressed because my sister had made the prank phone call.  When I asked her why she said I was depressed for months, she said that she would change it on her report but that I could not have a copy of the report because it would take a long time to process.  She said that she did not understand why I needed to have a copy of the report anyway.  She scolded as she said that this wouldn't have happened if I answered my phone and to answer my phone!

May 26  Made in person trip to Bloomington Police station and filed a disorderly conduct report about my sister.

May 27  Called Human Services in a.m. and asked to talk to the supervisor.

May 27  3:30 p.m. Officer Wamsley called and asked how things were.  I told Officer Wamsley that I had filed a disorderly conduct report.  Officer Wamsley asked me if I was contacting an attorney over the inheritance.

May 27  4:30 p.m.  Return call from Kim who said Mark Benson will call me back.  Received no return call from Mark Benson.

May 28  12:00 p.m. Made an in person trip to Human Services and asked for something in writing that clarified the false situation and adverse report that had been made.  I asked to talk to the supervisor who was not available.  Talked to Jennifer requesting this written clarification.  Jennifer told me to come back and talk to Chris Hays.

May 28  2:00 p.m.  Returned in person to Human Services and talked to Chris Hays, requesting to talk to the supervisor who was not available.  I then requested clarification from Chris Hays who said that he could not give me what I requested because he was not authorized to do so but that he could fill out a paper right then and there evaluating me and I agreed in order to obtain clarification of the falseness of the adverse report made by Piggush.

June 21  Made in person trip to Bloomington Police station to add to the disorderly conduct report I had filed on May 26th, not yet realizing that there was no error made on the first report but that someone was changing my words.  I signed no document and did not make the statements on the disorderly conduct report on May 26 or June 21, the report statements are the words of someone else who intervened and recorded those statements.  The report continued to remain administratively closed and upon obtaining a copy of the report, it was notated on the report that it had been referred to Todd Greenburg.

June 21  I Sent individual notes to Nicole Piggush, Mark Benson and Chris Hays via USPS registered mail which stated clearly that I had no verbal contract with them nor any contract at all.  This correspondence was made because I did not realize I had any kind of contract with them at all until I read the reports.

June 21   I Sent a letter via registered mail to Robert Keller Director of Health Services who was mistakenly taken for Director of Human Services.  Keller returned a correspondence directing me to Tom Barr, the correct director of Human Services.

July 2  I then Sent a letter via registered mail to Tom Barr, Director of Human services requesting written clarification that the incident was false and that the false reports be expunged. Tom Barr responded in a timely fashion stating in so many words that he could not give me what I asked for but that he would put my letter in my file.

Plaintiff has enclosed in her amended complaint a date/time record of correspondences with both the police department and Center For Human Services which shows the great effort taken to correct the corrupt behavior of the establishments in her community.  Many documents were generated during the correspondences and will be shown as needed.  In belief that this Court is in the proper jurisdiction to correct the wrong doing by the defendants, plaintiff continues with her demand for Justice the entitled monetary amount which is designed to offer relief to the plaintiff, who was wronged repeatedly and to such an extent as to feel anguished and unwelcome in Bloomington, Illinois.  The monetary amounts are also designed to show value and importance to the laws that exist and penalization for the breaking of laws, to discourage this type of behavior in the future.  Plaintiff also requests review of the "Motion to Default" filed originally on August 22, 2005, reviewing the procedures and events that lead up to the filing of the Motion to Default and the validity of such a motion being filed.

*Lynn Guevrekian*

Lynn T. Guevrekian
1213 Royal Pointe Drive
Bloomington, Illinois
61704

LYNN T. GUEVREKIAN
VS
BUSINESS BLOOMINGTON POLICE DEPARTMENT; BUSINESS MCLEAN CTY CTR FOR HUMAN SERV; BUSINESS HEARTLAND APARTMENT MGMT

Case Number: NE2005AR264

COURT PAPER TYPE: Summons
COURT PAPER SUMMARY: -HEARTLAND APARTMENT MGMT, BUSINESS
COURT PAPER STATUS: Completed

**Individual Summary:** HEARTLAND APARTMENT MGMT, BUSINESS - DOB:
RACE: Unknown  SEX: Unknown
**Individual Return / Service Status: Served**

Corporation Served this writ this __03__ day of __June__, __2005__, by reading it to the within named __Wayne Pelhank__ **Owner**.

Served Sex: __M__    Served Race: __W__    Served DOB: __

Comment: Corporation service @ 901 E. Grove St., Ste. 3A, Blm., IL
Service, . . . . . . . . . . . . . . . . $ 25.00
Miscellaneous Fees:

FILED
McLEAN
JUN 0 7 2005
CIRCUIT CLERK

_____ SHERIFF

__4__ miles necessary travel from Law and Justice Center to place of service of within named person and return,

$ .50 per mile . . . . . . . . . . . $ 2.00   By __MCSP DEPUTY SHERIFF MIKE TROBEC - ID # 6192__

Return . . . . . . . . . . . . . . . $ 8.00
TOTAL . . . . . . . . . . . . . . . $ 35.00

ATTACHMENTS:

227781

Page 1   of 1

SHERIFF'S FEES   Service and return_____ $_____
                 Miles_____ $_____
                 Total_____ $_____

          Sheriff of_____County

I certify that I served this summons on defendants as follows:

(a) -- (Individual defendants -- personal):

By leaving a copy thereof and a copy of the complaint with the defendant personally. [The officer or other person making service shall (a) identify as to sex, race, and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with defendant.]

                                                                 DATE & TIME OF SERVICE
_____          _____
_____          _____
_____          _____

(b) -- (Individual defendants -- abode):

By leaving a copy thereof and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons. [The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with such person.]

                                                                 DATE & TIME OF SERVICE
_____          _____
_____          _____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

Name of defendant                Mailing address                 Date of mailing
_____          _____         _____
_____          _____         _____
_____          _____         _____

(c) -- (Corporation defendants):

By leaving a copy thereof and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

Defendant corporation            Registered agent, officer or agent        Date of service
_____          _____                   _____
_____          _____                   _____
_____          _____                   _____

(d) -- (Other service):
_____
_____

          Sheriff of _____County

          By:_____
          Deputy

Affidavit on file for leave to sue as a poor person

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
MCLEAN COUNTY

LYNN T. GUEVREKIAN        Plaintiff, )
                                     )
vs.                                  )
                                     )
BLOOMINGTON POLICE DEPARTMENT        )
MCLEAN COUNTY CENTER FOR HUMAN SERVICES )
HEARTLAND APARTMENT MANAGEMENT       )
                         Defendant. )   Case No.  05 AR 264

A FEE WILL BE DUE AT THE TIME OF FILING AN APPEARANCE OR ANSWER YOUR FILING FEE WILL BE $ 118 —

FILED JUN 0 7 2005 MCLEAN COUNTY CIRCUIT CLERK

FILE STAMP

## THIS IS AN ARBITRATION CASE
## SUMMONS

To each defendant: Heartland Apartment Management, 901 E. Grove St., Suite A, Bloomington, IL

You are hereby summoned and required to appear before the Court at the McLean County Law and Justice Center, 104 West Front Street, Bloomington, Illinois, on **Friday, July 8th** at **9:00 a.m.**, 20 **05**, to answer the complaint of the plaintiff(s) a copy of which is attached. **IF YOU FAIL TO DO SO, A JUDGMENT OF DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED AGAINST YOU.**

**To the Officer:**

This summons must be returned by the officer, or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service and not less than three days before the day for appearance. If service cannot be made, the summons should be returned so endorsed.

Witness:   Clerk of the Eleventh Judicial Circuit Court, McLean County and the seal thereof at Bloomington, Illinois

Dated     MAY 31, 2005

*Sandra K. Parker*
*Carin R. Doage*

**NOTICE TO PLAINTIFF**

When preparing the above Summons, the return date, which will be not less than 21 days nor more than 40 days after the date of issuance of summons, will be set by the Clerk of the Court at the time of filing the Complaint.

If you fail to appear on the date set for return shown above, the case will be dismissed for want of prosecution.

Plaintiff's Attorney (or Plaintiff, if not represented by attorney): **Lynn T. Guevrekian**
ARDC Number: _____
Address: **303 Oakland Avenue**
City: **Bloomington, IL  61701**
Telephone: **309-828-7356**

FILED
MAY 1 9 2005
McLEAN COUNTY
CIRCUIT CLERK

Affidavit on file for leave to sue as a poor person

Lynn T. Guevrekian

PLAINTIFF

Bloomington Police Department
Mclean County Center for Human Services
Heartland Apartment Management

Case No. 05 AR 264

Amount Claimed $50,000.00 Each

DEFENDANT'S

Plaintiff, Lynn T. Guevrekian claims: DEFENDANT'S Bloomington Police Department, Mclean County Center for Human Services, Heartland Apartment Management is indebted to Plaintiff for $50,000.00 Each Party for:

The atrocious behavior that took place on May 20, 2004 involving each party after a prank phone call was made from out of State; 1100 miles away to which there was no validation of its truthfulness, no evidence and no exigent circumstance that warranted violent and illegal entry into my residence from both the Police and Social Worker after they broke open my apartment door while I was in the shower and then afterwards wrote false, misleading and damaging reports about the incident and recruited a false witness to support the false report.

No part of the indebtedness has been paid.
DEFENDANT resides at: 303 Oakland Avenue, Bloomington, Illinois, Mclean County, telephone NO. 309- 828-7356.

The undersigned, being first duly sworn on oath, deposes and says that he/she has read the complaint and has knowledge of the contents thereof, and that the matters set out herein are true in substance and fact.

Signed and sworn to before me

_Lynn Guevrekian_
PlAINTIFF

5-19- 2005

Sandra K Parker
Notary Public                Circuit Clerk

By _Diane Toney_
Deputy

**McLean County Center for Human Services**
J8 West Market Street • Bloomington, IL 61701
**CRISIS CONTACT NOTE / CLIENT INTAKE FORM**

☐ NPP to be mailed

Date: 5-20-04

**PLEASE PRINT**

Client Name: Guevrekian, Lynn
  Last          First          Middle I.

Date of Birth: 6-24-64 (39 yo)

Staff Name: N. Piggush     Staff ID#: 2909     SS#: _____
  *If Different From Client ID#*

| TRU/C | L/C | ACT CODE | PROJ NO. | GRP NO. | TIME SPENT | TIME OF DAY | CASE NUMBER | RECP | ATTEND ID | NO. OF RECIP |
|---|---|---|---|---|---|---|---|---|---|---|
| 158 | 4 | 1511 | | | 1.15 | 16.00 | New # | 5 | 3 | 7 |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Check Appropriate Number For Each of the Following Categories:**

**Sex:**
☐ 1 Male
☒ 2 Female

**Activity:**
☐ 1 Screening/Crisis (In-House only)
☒ 2 Crisis On-Call (mobile only)
☐ 3 Crisis On-Call (phone only)
☐ 4 Police & On-Call (mobile only)
☐ 5 Consultation (In-house only)
☐ 6 Short-term Counseling/Therapy (In-House only)
☐ 7 Crisis In-House (phone only)

**Location:**
☐ 1 CHS
☐ 2 Center St PPM
☒ 4 Client's residence
☐ 5 School/workplace
☐ 6 Public place/ comm.
☐ 7 Law enforce/jail/court
☐ 8 Day Treatment
☐ 9 Rooming House

☐ A Residential-Other
☐ B Hospital -BroMenn
☐ C Hospital-State
☐ D Hospital-Other
☐ E LTC Facility
☐ F Social Service Agency

**Referral From:**
☐ 01 Self
☒ 02 Family
☐ 03 Friend/Signif. Other
☐ 04 Church/Synagogues
☐ 05 Employer/Business
☐ 06 BroMenn ER/Other
☐ 07 BroMenn Psychiatric
☐ 08 St Joseph ER/Other
☐ 10 Other SOF
☐ 11 Other Hospital
☐ 12 Private Practitioner
☐ 13 Area Physician
☐ 14 Blm. Police Dept.
☐ 15 Normal Police Dept.
☐ 16 Sheriff Dept.
☐ 17 Other Law Enforce
☐ 18 Corrections/Court
☐ 19 Jail
☐ 20 PATH
☐ 21 DCFS
☐ 22 Baby Fold

☐ 23 Catholic Social Ser
☐ 24 Children's Found.
☐ 25 Chestnut/Lighthouse
☐ 26 DORS
☐ 27 Other-Social Serv
☐ 28 District 87 School
☐ 29 Unit 5 School
☐ 30 Other-School/College
☐ 31 Nursing Home
☐ 32 Other-CHS Program
☐ 33 Crisis Team
☐ 34 Other-MHC
☐ 35 Other: _____
☐ 36 McFarland

**Situation:** (Check # of Primary & Underline Secondary Situations)
☐ 01 Psychosis
☐ 02 Mania
☐ 03 Depression
☐ 04 Suicide
☐ 05 Anxiety/Panic
☐ 06 Anger/Temper
☒ 07 Violence/ Homicide
☐ 08 Domestic Violence Victim
☐ 09 Domestic Violence Perpetrator
☐ 10 Behav Prob of C/A

☐ 11 Sexual Abuse of C/A - Victim
☐ 12 Sexual Abuse of C/A - Perpetrator
☐ 13 Sexual Assault of Adult/Victim
☐ 14 Sexual Assault of Adult/Perpetrator
☐ 15 Alcohol
☐ 16 Street Drugs
☐ 17 Other: _____
☐ 18 ADHD

**Resolution:**
☐ 1 Client Placed
☒ 2 Client Referred
☐ 3 Only Crisis Serv.
☐ 4 Other Positive Resolution
☐ 5 Death
☐ 6 Not Located
☐ 7 Client Refused Serv

**Placement or Referral:**
☐ 02 BroMenn, vol.
☐ 03 BroMenn, invol
☐ 08 Mission/Safe Harbor
☐ 09 Access - AOP
☐ 11 Access – C/A

☒ 12 ECI In-house
☐ 13 ECI On-call
☐ 14 Comm. Support
☐ 15 CHS Psychiatrist
☐ 16 Other Psychiatrist/Therapist
☐ 17 Other Agency
☐ 18 None
☐ 19 Referred/out of county
☐ 20 Referred/CHS doesn't offer service
☐ 21 T.A. Doesn't meet eligibility
☐ 22 T.A. Problem isn't severe enough to warrant services
☐ 23 T.A. CHS at capacity
☐ 24 T.A. Other
☐ 25 McFarland vol.
☐ 26 McFarland invol.
☐ 27 Other State Hospital

**Client Status:**
☐ 1 Open/Active
☒ 2 Needs to be Opened
☐ 3 Not to be Opened

**STOP HERE IF FURTHER CLINICAL DOCUMENTATION IS NOT NEEDED**

Address: 620 N. Main #6       County: McLean
  Apartment/Street
City: Bloomington     State: IL     Zip Code: 61701

Phone:
(Home) (  ) 828-2803    (Work) (  ) 826-5857    DCFS #: _____

Emergency Contact/
Guardian: _____ / _____ Phone: _____
                                relationship

Address: _____
  Apartment/Street    County    Township

City    State    Zip Code

Client Medicaid No: _____     Temporary Assistance For Needy Families: _____
         (from back of card)

CHS-01
Rev. 9/2001, 8/2002, 10/2002

**Presenting Problems (Extent, Nature, & Severity):** ☐ Deferred – See Narrative

**Orientation:**
Time
Place  X3
Person

**Cognitive:**
Comprehension  OK
Memory
Reasoning

**Thought Processes:**
Hallucinations – Auditory        None
Hallucinations – Visual
Flight of Ideas
Loose Associations
Pressured Speech
Ideas of Reference
Depressed Speech
Delusions
Paranoid Ideation
Suicidal Ideation
Active Intent/Plan
Previous Ideation        DK
Previous Attempts
Homicidal Ideation       See note
History of Violence      No
History of Domestic Violence/Sexual Abuse
   Victim                DK
   Perpetrator
Impulse Control          fair
Contract to call Crisis  yes

**Affective:**
Depression  yes   Duration  few months
Euphoria    No    Duration
Sleep Disturbances      Duration
Appetite Change         Duration
Poor Concentration      Duration
Anxiety     yes   Duration  several months
Affect  heightened / anxious

**Substance Abuse:**
Type:
Last Use:
Frequency:
Amount:
None Reported:  X

Client treated in least restrictive environment: ☒ Yes ☐ No
Psychiatric evaluation is recommended: ☐ Yes ☒ No    Referred to: _____

**Clinical Narrative:**

In response to a crisis call initiated by Anna, Lynn's sister, E21 spoke w/ Anna. Anna reported Lynn was manic, labile, paranoid, & threatened to kill family "one by one" and had a gun in her possession. E21 called BPD to residence, & after locating correct apt, BPD proceeded to open her door & E21 spoke w/ Lynn. Lynn was "in the shower" & did not open the door previously. Lynn stated her father left $300,000 in will to other 3 siblings & nothing to Lynn. Lynn was anxious & angry b/c family will not share his possessions/money. Lynn admitted to saying she "would only get something if I killed them all" but reported it was a figure of speech & she has no intention of harming others/self. Her hygiene was fair & living conditions were also fair. Lynn contracted for safety & will call as needed. E21 phoned Anna who was unhappy w/ result. She

CHS-01

Client Name: __Lynn Guevrekian__  Date: __5-20-__  ☐ Open  ☐ Closed  ☒ DK

details presented by Confidentiality. History:
ECI referred Anna to ECI w/     State Hospital _____
PD w/ future problems. Lynn    Local Hospital _____
did have firearms w/ FOID card + PD did not    CHS _____
remove    Outpatient _____
   No Previous __✗__
   Substance Abuse Inpatient _____
Foster Care: ☐ Yes ☒ No    DCFS Ward: ☐ Yes ☒ No    Substance Abuse Outpatient _____
   Unknown: _____

Hospitalizations: __Ø__

Medications: __Ø__

Most Recent discharge date: _____

Doctor: _____  Psychiatrist: _____  Therapist: _____

Indicate any physical, developmental, or communication issues that will influence the delivery of service or which warrant additional assessment: _____

---

**ICD-9/DSM-IV DIAGNOSIS:**

Axis I: __309-9__  Axis II: __V71.09__  Axis III: __none__  Axis V: (GAF/CGAS) __47__

Axis I: _____  Axis II: _____  Axis III: _____

Axis IV: ☒ Primary Support Group  ☒ Social Environment  ☐ Educational  ☒ Occupational  ☐ Housing
       ☒ Economic  ☐ Health Care Access  ☐ Legal  ☐ Other: _____

SASS ONLY: End GAF/CGAS: __/__  End Date: _____

**Program Information:** Program: __158__  Begin Date: __5-20-04__  End Date: _____
Primary Therapist: __2409__

**Appointments:**  Client informed about fee? ☒ Yes ☐ No ☐ NA

Access: Date: ___ Time: ___ With: ___
Crisis: Date: ___ Time: ___ With: ___
Psychiatrist: Date: ___ Time: ___ With: ___
Other Agency: Date: ___ Time: ___ With: ___
SASS ONLY: Date: ___ Time: ___ With: ___
48 Hour Discharge

Signature: __Nicole Puggach, MSW, CSW__  Signature: __Kimberly A. Thomas MSW__

     Prescribing Physician & Date              Supervising QMHP & Date

**STOP HERE IF CLIENT IS CURRENTLY OPEN TO CHS. CONTINUE IF CLIENT IS TO BE OPENED.**

CHS-01
Rev. 9/2001, 8/2002, 10/2002

**TO BE COMPLETED ON ALL CLIENTS TO BE OPENED.** Check appropriate box for each item:

**Client Race:**
- ☑ 10 White, non-Hispanic
- ☐ 20 African American, non-Hispanic
- ☐ 30 Asian
- ☐ 40 Native American/Native Alaskan
- ☐ 50 Pacific Islander
- ☐ 90 Other
- ☐ 99 Unknown

**Forensic/Court Ordered:**
- ☑ 00 Not applicable
- ☐ 01 DOC client
- ☐ 02 Unable to stand trial
- ☐ 03 Unable to stand trial ET
- ☐ 04 Unable to stand trial G2
- ☐ 05 Not guilty/reason of insanity
- ☐ 06 Civil court ordered treatment
- ☐ 07 Criminal court ordered treatment
- ☐ 08 Court Ordered Eval.
- ☐ 99 Forensic status unknown

**Employment Status:**
- ☐ 10 Employed Vac/Sick Time
- ☐ 11 Employed Full-Time Unsub
- ☐ 12 Part-Time - Unsub
- ☐ 13 Employed - Sub/Supp
- ☐ 14 Vocational/Day Prog
- ☐ 20 Unemployed/Layoff
- ☑ 30 Not in Labor Force
- ☐ 90 Other
- ☐ 99 Unknown

**Living Arrangement:**
- ☐ 10 Homeless
- ☐ 21 Private Res - Supervised
- ☑ 22 Private Res - Unsupervised
- ☐ 31 Other Res - Supervised
- ☐ 32 Other Res - Unsupervised
- ☐ 40 State Operated Fac
- ☐ 50 Jail or Corr Fac
- ☐ 60 Other Institut Setting
- ☐ 80 Boarding School
- ☐ 90 Other
- ☐ 99 Unknown

**Client SSI/SSDI Status:**
- ☐ 1 Eligible, receiving payments
- ☐ 2 Eligible, not receiving payments
- ☐ 3 Eligible, status pending
- ☐ 4 Potentially eligible, has not applied
- ☐ 5 Eligibility determined & denied
- ☑ 6 Not eligible
- ☐ 9 Eligibility status unknown

**Marital Status:** ☐ 1 Never Married   ☐ 2 Married   ☐ 3 Widowed   ☐ 4 Divorced   ☐ 5 Separated   ☑ 9 Unknown

**Years of Education:** _12 (assumed)_

☐ **Meets none of the criteria below.**

**For ALL Referrals (Adults, Children & Adolescents):** Check all that apply.
- ☐ Continuous treatment of 6 months or more in one or a combination of the following treatment modalities: Inpatient, Day Treatment, Partial Hospitalization.
- ☐ Six months continuous residence in residential setting program.
- ☐ Two or more admissions to inpatient treatment, day treatment, partial hospitalization, or residential programming within a 12 month period.
- ☐ History of using the following outpatient services over a one-year period, either continuously or intermittently: Psychotropic Medication Management, Case Management, Outreach and engagement services (adult referrals only), SASS/Intensive Community Based Services (child/adolescent referrals only).
- ☐ Previous treatment in an outpatient modality and a history of at least one mental health psychiatric hospitalization.

**For Adult Referrals Only:** Check all that apply.
- ☐ Serious impairment in social, occupational, or school functions.
- ☐ Unemployed or working only part-time due to mental illness and not for reasons of physical disability or some other role responsibility (e.g., student or primary caregiver for dependent family); is employed in a sheltered setting or supportive work situation, or has markedly limited work skills.
- ☐ Requires help to seek public financial assistance for out-of-hospital maintenance (e.g., Medicaid, SSI, SSDI, other indicators).
- ☐ Does not seek appropriate supportive community services (e.g., recreational, educational, or vocational support without assistance).
- ☐ Lacks supportive social systems in the community (e.g., no intimate or confiding relationships with anyone in their personal life, no close friends or group affiliations, is highly transient or has inability to co-exist within family setting).
- ☐ Requires assistance in basic life and survival skills. (Must be reminded to take medications, must have transportation to mental health clinic and other supportive services, needs assistance in self-care, household management, food preparation or money management, etc., is homeless or at risk of becoming homeless.)
- ☑ Exhibits inappropriate or dangerous social behavior resulting in demand for intervention by mental health and/or judicial/legal system.
- ☐ Currently receiving treatment, has a history within the past 5 years of functional impairment meeting two of the functional criteria listed above which persisted for at least 12 months, and there is documentation supporting the professional judgment that regressions in functional impairment would occur without continuing treatment.

**For Child/Adolescent Referrals Only:** Check all that apply.
- ☐ Self-Care: Impairment is manifested by a person's consistent inability to take care of personal grooming, hygiene, clothes, and meeting nutritional needs.
- ☐ Community: Impairment is manifested by a consistent lack of age appropriate behavioral controls, decision-making, judgment, and value systems which results in potential involvement or involvement of the juvenile justice system.
- ☐ Social Relationships: Impairment is manifested by the consistent inability to develop and maintain satisfactory relationships with peers or adults.
- ☐ Family: Impairment is manifested by a pattern of (1) disregard for safety and welfare of self or others (e.g., fire setting, serious & chronic destructiveness), (2) significantly disruptive behavior exemplified by repeated and/or unprovoked violence to siblings and/or parents, or (3) inability to conform to reasonable limitations and expectations. The degree of impairment requires intensive (i.e., beyond age appropriate) supervision by parent/caregiver and may result in removal from the family or its equivalent.
- ☐ School: Impairment is manifested by the inability to pursue educational goals in a normal time frame (e.g., consistent failing grade repeated truancy, expulsion, property damage, or violence toward others -- that cannot be remediated by a classroom setting (whether traditional or specialized).

Incident Narrative 1  05/20/2004 18:47

Reporting SERGEANT RANDALL WIKOFF - BPD, ID # 3879

On the afternoon of Thursday, 5-20-2004 approximately 1530 hours, patrol units were dispatched to 620 N. Main, in response to a call from PATH/CHS/Crisis Team. The inital call was that the resident of apartment 5 had said she was going to start shooting people.

I responded from BPD along with several other Officers. Eventually it was determined that Lynn Guevrekian was the lady who had made the remark to a third party, her own sister. The sister had called CHS/Path. The apartment in question is a thrd floor unit located above HobbyLobby and an upholstery shop at 618-622 N. Main. I found out that the building is owned and operated by Heartland Management. I telephoned their number and made arrangements for a maintainence man to come unlock the two apartments, 5 and 6, for us, so that we could check the welfare of the lady. No responses were ever gained from knocking. We were able to learn for sure that Lynn Guevrekain lives in unit 6, and we could hear her phone ringing, per our request to MetCom.

Maintainence opened apartment 5, we searched and it was empty. Maintainence opened number 6, and it was chain-locked from the inside. Maintainence advised there was no other working door for that unit, so we surmised that some person was most likely inside the apartment. Maintainence also advised that tenants are prohibited from affixing supplemental locks (i.e. the chain lock) to the doors, and if we felt the need to force it open, he would repair it without complaint.

Myself, and Officers Wamsley, Day and Melton knocked and called to Guevrekian by name. She did not repond. I determined that forcing entry was appropriate, so I pushed the door open until the chain gave way. We entered the unit. Ms. Guevrekian was in the shower. I called to her, and she agreed to come out, get dressed and talk to us. I did not look behind the shower curtain or stay in the bathroom after speaking to her. She had poked her head around the edge of the curtain. I called Crisis forward, but we stood by in the hallway reference the gun threat, after she had dressed herself.

Crisis interviewed her as we listened. Guevrekian advised that she had just had an argument via telephone with her sister Anna, in Flordia, over the settling of the estate of her recently deceased father. Guevrekian advised that she was cut out of the will, and she is furious over the behavior of the rest of her family. She said she had just moved out of apartment 5 and into apartment 6. She admitted, word for word, what Crisis had been advised of...to wit that the only way she could get even with her family for treating her so badly would be to start shooting them. She also said that she had no plans, no intentions and no means to go to Florida to do it.

She advised she owns two handguns for fun and personal safety. I inspected her FOID card. MetCom advised it was valid.

She also said that she had heard us knocking at her door, and at #5, and chose not to answer it.
Crisis was content that she posed no threat. There was no compelling reason to seize her weapons.
Officer Wamsly advised that he would make contact with the sister in Florida.
This ended BPD's involvement with this call.

## CERTIFICATE OF SERVICE

I hereby certify that on the ___24th___ day of ___January___, 20_06_, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following: Peter R. Jennetten, Quinn, Johnston, Henderson & Pretorius, 227 NE Jefferson St., Peoria, IL 61602-1211; Amanda J. Watson, Quinn, Johnston, Henderson & Pretorius, 227 NE Jefferston St., Peoria, IL 61602-1211; John Casey Costigan, Costigan & Wollrab, 308 E. Washington, Bloomington, IL 61701; and Eitan Weltman, Law Office of Eitan Weltman, 802 N. Clinton St., Ste. A, Bloomington, IL 61701-3229, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Lynn T. Guevrekian
P.O. Box 1114
Bloomington, IL 61702-1114

S/ BARBARA SNOW MIRDO
No.: 06230302
Attorney for Defendant
THIELEN, FOLEY & MIRDO, LLC
207 W. Jefferson St., Ste. 600
Bloomington, IL 61701
Phone: 309/820-0040
Fax: 309/820-0041
E-mail: mirdo.b@thielenlaw.com